UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

          Plaintiff,

v.

YORK INTERNATIONAL CORPORATION,

          Defendant.

Civil Action No. 07 1750

FILED
OCT - 2 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**FINAL JUDGMENT AS TO DEFENDANT YORK INTERNATIONAL CORPORATION**

The Securities and Exchange Commission having filed a Complaint and Defendant York International Corporation ("Defendant" or "York") having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 30A of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78dd-1] by use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of

any offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to—

    (1)    any foreign official for purposes of—

        (A)(i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or (iii) securing any improper advantage; or

        (B) inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist Defendant in obtaining or retaining business for or with, or directing business to, any person;

    (2)    any foreign political party or official thereof or any candidate for foreign political office for purposes of—

        (A)(i) influencing any act or decision of such party, official, or candidate in its or his official capacity, (ii) inducing such party, official, or candidate to do or omit to do an act in violation of the lawful duty of such party, official, or candidate, or (iii) securing any improper advantage; or

        (B) inducing such party, official, or candidate to use its or his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist Defendant in obtaining or retaining business for or with, or directing business to, any person; or

2

(3) any person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official, to any foreign political party or official thereof, or to any candidate for foreign political office for purposes of—

(A)(i) influencing any act or decision of such foreign official, political party, party official, or candidate in his or its official capacity, (ii) inducing such foreign official, political party, party official, or candidate to do or omit to do any act in violation of the lawful duty of such foreign official, political party, party official, or candidate, or (iii) securing any improper advantage;

(B) inducing such foreign official, political party, party official, or candidate to use his or its influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist Defendant in obtaining or retaining business for or with, or directing business to, any person.

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A), by failing to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Defendant.

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(B), by failing to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: (i) transactions are executed in accordance with management's general or specific authorization; (ii) transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and to maintain accountability for assets; (iii) access to assets is permitted only in accordance with management's general or specific authorization; and (iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

IV.

1.  York agrees to engage an independent compliance monitor ("Monitor") within sixty (60) calendar days of the entry of the Final Judgment. For thirty (30) calendar days after the entry of the Final Judgment, York and the Securities and Exchange Commission (the "Commission") shall use mutual best efforts to identify a mutually acceptable person to serve as the Monitor. If, after that period, the parties have been unable to identify a mutually acceptable person then the Commission staff in its sole discretion shall select a person to serve as the Monitor. The Monitor will, for a period of three (3) years from the date of the Final Judgment, evaluate, in the manner set forth in paragraphs IV.2 through IV.9 below, the effectiveness within

4

the legacy York International operations ("Legacy York Operations") of its parent company, Johnson Controls, Inc's. internal controls, record-keeping, and financial reporting policies and procedures as they relate to compliance with the books and records, internal accounting controls, and anti-bribery provisions of the Foreign Corrupt Practice Act, codified at Sections 30A, 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78dd-1, 78m(b)(2)(A), and 78m(b)(2)(B)] (the "FCPA") and other applicable anti-corruption laws. This review and evaluation shall include an assessment of those policies and procedures as actually implemented within the Legacy York Operations. The Monitor's assignment does not include an overall evaluation of Johnson Controls, Inc.'s internal controls, record-keeping, and financial reporting policies and procedures, although the Monitor may take reasonable steps to familiarize himself or herself with such controls to the extent reasonably necessary to review their effectiveness within the Legacy York Operations.

2. York shall cooperate fully with the Monitor and the Monitor shall have the authority to take such reasonable steps, in his or her view, as may be necessary to be fully informed about Johnson Controls, Inc.'s compliance program as applied to the Legacy York Operations within the scope of his or her responsibilities under the Final Judgment. To that end, York shall provide the Monitor with access to all information, documents, records, facilities and/or employees that fall within the scope of responsibilities of the Monitor under the Final Judgment. Any such disclosure to the Monitor retained by York concerning corrupt payments, related books and records, and related internal controls, shall not relieve York of its obligation to truthfully disclose such matters to the Commission staff.

    a. The parties agree that no attorney-client relationship shall be formed between York and the Monitor.

b. In the event that York seeks to withhold from the Monitor access to information, documents, records, facilities and/or employees of York which may be subject to a claim of attorney-client privilege or to the attorney work-product doctrine, York shall promptly provide written notice of this determination to the Monitor and the Commission staff. Such notice shall include a general description of the nature of the information, documents, records, facilities and/or employees that are being withheld, as well as the basis for the claim. The Commission staff may then consider whether to make a further request for access to such information, documents, records, facilities and/or employees.

c. Except as provided in this paragraph, York shall not withhold from the Monitor any information, documents, records, facilities and/or employees on the basis of an attorney-client privilege or work-product claim.

3. York agrees that the Monitor shall assess: (1) whether Johnson Controls, Inc.'s compliance program as applied to the Legacy York Operations is reasonably designed to detect and prevent violations of the FCPA and other applicable anti-corruption laws; (2) the integration of Johnson Controls, Inc.'s compliance program into the Legacy York Operations; and (3) the progress of Johnson Controls, Inc.'s review of the Legacy York Operations. During the three-year period, the Monitor shall conduct an initial review and prepare an initial report, followed by two (2) follow-up reviews and reports as described below. With respect to each of the three (3) reviews, after initial consultations with York and the Commission staff, the Monitor shall prepare a written work plan for each of the reviews, which shall be submitted in advance to York and the Commission staff for comment. In order to conduct an effective initial review and to fully understand any existing deficiencies in controls, policies and procedures related to the FCPA and other applicable anti-corruption laws, the Monitor's initial work plan shall include

such steps as are reasonably necessary to develop an understanding of the facts and circumstances surrounding any violations that may have occurred, but it is not intended that the Monitor will conduct his or her own inquiry into those historical events. Any disputes between York and the Monitor with respect to the work plan shall be decided by the Commission staff in its sole discretion.

4.      In connection with the initial review, the Monitor shall issue a written report within one hundred twenty (120) calendar days of his or her retention setting forth the Monitor's assessment and making recommendations reasonably designed to improve the policies and procedures of Johnson Controls, Inc. as applied to the Legacy York Operations for ensuring compliance with the FCPA and other applicable anti-corruption laws. The Monitor shall provide the report to the Board of Directors of York and contemporaneously transmit copies to Cheryl Scarboro, Associate Director, Division of Enforcement, 100 F Street, NE, Washington, DC 20549-6030. The Monitor may extend the time period for issuance of the report with prior written approval of the Commission staff.

5.      Within one hundred and twenty (120) calendar days after receiving the Monitor's report, York shall adopt all recommendations in the report; provided, however, that within sixty (60) calendar days after receiving the report, York shall advise the Monitor and the Commission staff in writing of any recommendations that York considers unduly burdensome, impractical, costly or otherwise inadvisable. With respect to any recommendation that York considers unduly burdensome, impractical, costly, or otherwise inadvisable, York need not adopt that recommendation within that time but shall propose in writing an alternative policy, procedure or system designed to achieve the same objective or purpose. As to any recommendation on which York and the Monitor do not agree, such parties shall attempt in good faith to reach an agreement

within forty-five (45) calendar days after York serves the written advice. In the event York and the Monitor are unable to agree on an alternative proposal, York shall abide by the determination of the Monitor. With respect to any recommendation that the Monitor determines cannot reasonably be implemented within one hundred and twenty (120) calendar days after receiving the report, the Monitor may extend the time period for implementation with prior written approval of the Commission staff.

6.  The Monitor shall undertake two (2) follow-up reviews to further monitor and assess whether the policies and procedures of Johnson Controls, Inc. as applied to the Legacy York Operations are reasonably designed to detect and prevent violations of the FCPA and other applicable anti-corruption laws. Within one hundred and twenty (120) calendar days of initiating each follow-up review, the Monitor shall: (a) complete the review; (b) certify whether the anti-bribery compliance program of Johnson Controls, Inc., including its policies and procedures, is appropriately designed and implemented to ensure compliance with the FCPA and other applicable anti-corruption laws within the Legacy York Operations; and (c) report on the Monitor's findings in the same fashion as set forth in paragraph IV.4 with respect to the initial review. The first follow-up review shall commence one year after appointment of the Monitor under the Final Judgment. The second follow-up review shall commence at least one year after completion of the first follow-up review. The Monitor may extend the time period for these follow-up reviews with prior written approval of the Commission staff.

7.  In undertaking the assessments and reviews described in paragraphs IV.3 through 6, the Monitor shall formulate conclusions based on, among other things: (a) inspection of relevant documents, including Johnson Controls, Inc.'s policies and procedures relating to anti-corruption compliance within the Legacy York Operations; (b) onsite observation of the

systems and procedures of the Legacy York Operations, including the Legacy York Operations internal controls and record keeping and internal audit procedures; (c) meetings with and interviews of relevant employees, officers, directors and other persons at mutually convenient times and places; and (d) analyses, studies and testing of Johnson Controls, Inc.'s anti-bribery compliance program as applied to the Legacy York Operations.

8. Should the Monitor, during the course of his or her engagement, discover that questionable or corrupt payments or questionable or corrupt transfers of property or interests may have been offered, promised, paid, or authorized by any entity or person within the Legacy York Operations, or any entity or person working directly or indirectly for the Legacy York Operations, or that related false books and records have been maintained relating to the Legacy York Operations, the Monitor shall promptly report such payments to Johnson Controls, Inc.'s General Counsel, to its Audit Committee and to its outside counsel for further investigation, unless the Monitor believes, in the exercise of his or her discretion, that such disclosure should be made directly to the Commission staff. If the Monitor refers the matter only to Johnson Controls, Inc.'s General Counsel, its audit committee, and its outside counsel, York shall promptly report the same to the Commission staff. If York fails to make such disclosure within ten (10) calendar days of the report of such payments, the Monitor shall independently disclose his or her findings to the Commission staff at the address listed above in paragraph IV.4. Further, in the event that York, or any entity or person working directly or indirectly within the Legacy York Operations, refuses to provide information necessary for the performance of the Monitor's responsibilities, the Monitor shall disclose that fact to the Commission staff. York and its shareholders shall not take any action to retaliate against the Monitor for any such disclosures or for any other reason. The Monitor may report other criminal or regulatory violations

discovered in the course of performing his or her duties, in the same manner as described above.

9. York shall require the Monitor to enter into an agreement with York that provides that for the period of engagement and for a period of two (2) years from completion of the engagement, the Monitor shall not enter into any additional employment, consultant, attorney-client, auditing or other professional relationship with York, Johnson Controls, Inc., or any affiliates, directors, officers, employees, or agents acting in their capacity as such. The agreement also shall provide that the Monitor will require that any firm with which he or she is affiliated or of which he or she is a member, and any person that he or she engages to assist in the performance of his or her duties under this Consent shall not, without prior written consent of the Commission staff, enter into any employment, consultant, agency, attorney-client, auditing or other professional relationship with York, Johnson Controls, Inc. or any affiliates, directors, officers, or employees, or agents acting in their capacity as such for the period of the engagement and for a period of two (2) years after the engagement. To ensure the independence of the Monitor, York shall not have the authority to terminate the Monitor without the prior written approval of the Commission staff.

V.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable for disgorgement of $8,949,132, representing profits gained as a result of the conduct alleged in the Complaint, together with pre-judgment interest thereon in the amount of $1,083,748, and a civil penalty in the amount of $2,000,000 pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3). Defendant shall satisfy this obligation by paying $12,032,880 within ten (10) business days after entry of this Final Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and

Exchange Commission. The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a cover letter identifying York International Corporation as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment. Defendant shall simultaneously transmit photocopies of the payment of disgorgement and payment of civil penalty and letter to the Commission's counsel in this action. By making these payments, Defendant relinquishes all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to Defendant. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961. The Commission shall remit the funds paid pursuant to this paragraph to the United States Treasury.

VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

VII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

Dated: _October 2_, 2007

_Royce C. Lamberth_
UNITED STATES DISTRICT JUDGE